UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| 80 MAPLE AVE LLC,<br><br>Plaintiff,<br><br>v.<br><br>HARLEYSVILLE INSURANCE COMPANY OF NEW JERSEY,<br><br>Defendant. | Civil Action No.<br><br>25-cv-02878 (BRM) (JRA)<br><br>**OPINION AND ORDER** |

**José R. Almonte, U.S.M.J.**

Defendant Harleysville Insurance Company of New Jersey moves to sever and stay Plaintiff's bad faith claim until after the issue of coverage is determined. Dkt. Nos. 15, 17 (the "Motion"). Plaintiff 80 Maple Ave LLC opposes the Motion. Dkt. No. 16. I have considered the Motion on the papers and decide it without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons set forth below, Defendant's Motion is **DENIED**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The facts of this matter are straightforward. A fire severely damaged a residential property in West Orange, New Jersey. Compl., Dkt. No. 1-1 ¶ 15. At the time of the fire, the property was owned by Ji Rhew and Moo Rhew (the "Rhews") and was covered by a home insurance policy issued by Defendant from October 4, 2023, to October 4, 2024 ("the Policy"). *Id.* ¶¶ 9–12.

After the fire, the Rhews submitted a claim to Defendant for coverage of the damage to the property. *Id.* ¶ 16. While Defendant was investigating the claim, the

Rhews sold the property, and assigned their insurance claim, to Plaintiff. *Id.* ¶¶ 17, 20–21. Ultimately, on October 25, 2024, Defendant denied coverage to Plaintiff on the basis that the Rhews's son, who was living at the home at the time of the fire, was not an "insured" as defined by the Policy and, therefore, the property could not be defined as a covered "residential premises." *Id.* ¶¶ 34–37.

Plaintiff filed its two-count Complaint against Defendant on March 18, 2025, in New Jersey state court. *See generally id.* Count One alleges breach of contract for failure to provide coverage and payment for Plaintiff's loss under the terms of the Policy, while Count Two alleges breach of the implied covenant of good faith and fair dealing and bad faith due to Defendant's coverage determination. *See* Compl. ¶¶ 9–45. On April 21, 2025, Defendant removed the matter to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Dkt. No. 1 ¶¶ 10–14. I held an initial scheduling conference with the parties on November 26, 2025, where Defendant first raised the issue of severance of Count One from Count Two; therefore, following the Rule 16 conference, Defendant was granted leave to file the instant Motion to formally request that the Court sever the breach of contract claim from the bad faith claim and stay the latter. Dkt. No. 14. The Motion is now fully briefed and ripe for resolution.

## II.    LEGAL STANDARD

Under the *Erie* doctrine, a federal court exercising diversity jurisdiction applies federal procedural law and state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). I am guided accordingly. Pursuant to Rule 21 of the Federal Rules of

Civil Procedure, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party . . . [and] may also sever any claim against a party." Fed. R. Civ. P. 21. Generally, "[s]evering claims under Rule 21 is appropriate where the claims to be severed are discrete and separate in that one claim is capable of resolution despite the outcome of the other claim." *AIG Specialty Ins. Co. v. Thermo Fisher Sci., Inc.*, No. 20-cv-13046, 2021 WL 2680013, at *4 (D.N.J. June 29, 2021) (quoting *Ames v. USAA Life Ins. Co.*, No. 18-cv-09865, 2018 WL 5634684, at *1 (D.N.J. Oct. 31, 2018)). Courts consider several factors when determining whether severance is warranted:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Riverview Towers Apartment Corp. v. QBE Ins. Corp.*, No. 14-cv-6744, 2015 WL 1886007, at *1 (D.N.J. Apr. 17, 2015) (quoting *Picozzi v. Connor*, No. 12-cv-4102, 2012 WL 2839820, at *6 (D.N.J. July 9, 2012)).

## III.   ANALYSIS

To determine whether severance is appropriate in this matter, it is important to put the claims in context. In general, "[a]n insurance policy is a contract that will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010) (citations omitted). When evaluating breach of contract claims arising from insurance policies, courts generally interpret the policy language "according to its plain and ordinary meaning." *Id.* (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255,

3

1260 (N.J. 1992) (citation omitted)). Of course, there are exceptions, none of which need to be addressed in this case for purpose of resolving the Motion. *See id.* Ultimately, "the determination of 'the proper coverage of an insurance contract is a question of law.'" *Causeway Auto., LLC v. Zurich Am. Ins. Co.*, No. 20-cv-08393, 2021 WL 486917, at *3 (D.N.J. Feb. 10, 2021) (quoting *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citation omitted)). If the plain language of the policy is unambiguous, courts will not "engage in a strained construction to support the imposition of liability or write a better policy for the insured than the one purchased." *Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1075 (N.J. 2016) (citation modified).

Next, as to bad faith claims, in New Jersey "an insurance company owes a duty of good faith to its insured in processing a first-party claim." *Onex Credit Partners, LLC v. Atrium 5 Ltd.*, 13-cv-5629, 2014 WL 4798758, at *6 (D.N.J. Sep. 26, 2014) (quoting *Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993)). A violation of the implied covenant of good faith and fair dealing, also known as a bad faith claim, "focuses on the conduct of the insurer in its review and processing of a claim under an existing policy." *J. Fletcher Creamer & Son, Inc. v. Hiscox Ins. Co.*, No. 19-cv-21638, 2020 WL 2899499, at *3 (D.N.J. June 2, 2020) (citation omitted). "Neither negligence nor mistake is sufficient to show bad faith." *Onex Credit*, 2014 WL 4798758, at *9 (quoting *Enright v. Farm Fam. Cas. Ins.*, No. 03-cv-4859, 2005 WL 3588485, at *8 (D.N.J. Dec. 29, 2005) (citation omitted)). Instead, "[t]o establish a claim for bad faith in the insurance context, a plaintiff must show two elements: (1) the insurer lacked a 'fairly

4

debatable' reason for its failure to pay a claim, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim." *Id.* at 7 (quoting *Ketzner v. John Hancock Mut. Life Ins. Co.,* 118 F. App'x 594, 599 (3d Cir. 2004) (citations omitted)). As for the "fairly debatable" prong, a plaintiff must show that there was no "reasonable basis for denying benefits of the policy." *Port Liberte Homeowners Ass'n, Inc. v. Lexington Ins. Co.*, No. 16-cv-07934, 2017 WL 1528697, at *1 (D.N.J. Apr. 25, 2017) (quoting *Pickett*, 621 A.2d at 453). "If there is a valid question of coverage, *i.e.*, the claim is 'fairly debatable,' the insurer bears no liability for bad faith." *Wacker-Ciocco v. Gov't Emps. Ins. Co.*, 110 A.3d 962, 967 (N.J. Sup. Ct. App. Div. 2015) (citing *Pickett*, 621 A.2d at 453–54).

"Given that the 'fairly debatable' standard necessitates a ruling on coverage prior to the adjudication of a bad faith claim, . . . it is '[n]o surprise, then that severance and stay of bad faith claims has been called the 'prevailing practice' in both the state and federal courts of New Jersey.'" *AIG Specialty Ins.,* 2021 WL 2680013, at *5 (quoting *J. Fletcher Creamer*, 2020 WL 2899499, at *4 (collecting cases)). "Whereas 'breach of insurance contract claims concern policy coverage[,]' claims for bad faith 'concern the insurer's general claims handling procedures, its claims conduct in the case at issue, and its knowledge and state of mind about the grounds for denial of coverage.'" *Id.* (quoting *Bayshore Recycling Corp. v. ACE Am. Ins. Co.*, No. 19-cv-21618, 2020 WL 1986484, at *2 (D.N.J. Apr. 27, 2020)). However, "this Court has refused to adopt a blanket rule that a plaintiff's bad faith claim should be severed in

every coverage case." *Ames*, 2018 WL 5634684, at *2. Instead, "[e]very case is different and must be decided on its own facts." *Id.*

Turning to the case before me, I find that the factors **do not** favor severance of Plaintiff's claims. At the outset, I view this application primarily as a request to sever and stay claims for purposes of discovery and case management, rather than trial, which is far on the horizon in this case. As to the first factor, per the structure and plain language of Plaintiff's Complaint, I am not convinced that Count One is *significantly* separate from Count Two to warrant severance of the claims and a stay of discovery related to the bad faith claim. Rather, the claims overlap in a meaningful manner.

Defendant argues generally that the claims are significantly different as Count One "relates to [Defendant's] coverage obligations for the damage to Plaintiff's property, and concerns the interpretation and application of policy language[.]" Dkt. No. 17 at 2. But, in reality, the Complaint posits a different story—Plaintiff's "breach of implied covenant of good faith and fair dealing and bad faith" claim (pled together) within *Count Two* challenges Defendant's coverage determination and Defendant's "interpretation and application" of the language and specific definitions of the Policy. *See* Compl. ¶¶ 33–43. In fact, Plaintiff's bad faith claim is tailored to Defendant's "[1,] [r]efusal to extend certain coverage based upon a flawed analysis; and [2,] [c]ontinued and knowing refusal to extend certain coverage upon clear evidence that its coverage determination was supported by incorrect facts." *Id.* ¶ 33. The Complaint goes on to describe within *Count Two* why Defendant's coverage determination was incorrect, in

6

part based upon its failure to define the prior owners' son as an "insured" under the terms of the Policy. *Id.* ¶¶ 34–43.

The bad faith claim, then, is not necessarily based upon separate conduct or facts related to general claim handling that has led other courts to conclude a plaintiff's bad faith and breach of contract claims are significantly separate. For example, this is not a case that involves distinguishable conduct such as allegations of an insurer's underpayment for damage to a property based on "inadequate and improper investigations," in which the plaintiff's "breach of contract claim concerns damage to its property while its bad faith claim addresses [the insurer defendant's] general claims handling procedures." S*ee Beachfront N. Condo. Ass'n, Inc. v. Lexington Ins. Co.,* No. 14-cv-6706, 2015 WL 3879665, at *1 (D.N.J. June 24, 2015); *see also Solimine v. Chubb Custom Ins. Co.*, No. 25-cv-01250, 2025 WL 3718747, at *5 (D.N.J. Dec. 23, 2025) (citing to the complaint and finding the key issue for the plaintiff's bad faith claim was the defendant's investigation of the damage to the plaintiff's property, which would involve different conduct focused on general claim handling procedures, claims conduct, and state of mind for the denial of coverage). In the instant case, I do not find that Plaintiff's breach of contract claim is truly distinguishable from its bad faith claim because both claims involve Defendant's conduct in denying coverage based upon its interpretation of the terms of the Policy. The first factor weighs against severance.

Moving to the second factor, it follows that the issues in both causes of action will likely involve substantially the same evidence and the same witnesses, and,

therefore, that severance will improperly fragment the litigation and hinder judicial efficiency, rather than promote it. Severance of discovery in this matter would likely lead to unnecessary, excess litigation for both parties considering that both claims focus on Defendant's coverage determination, which was based on Defendant's interpretation of the Policy terms, as noted above. There is no clear indication that Plaintiff's discovery requests will be as expansive or voluminous as other cases in this District. *See Riverview Towers*, 2015 WL 1886007, at *2 (finding the second factor weighed in favor of severance as the plaintiff's extensive interrogatories showed the plaintiff sought, among other things, "voluminous documents concerning defendant's claim handling procedures, confidential employee salary information, and other subject areas not directly relevant to plaintiff's first-party claim."); *see also Beachfront N. Condo. Ass'n,* 2015 WL 3879665, at *2 (same). This is not a complicated case that warrants such expansive discovery. In any event, should Plaintiff's discovery requests go beyond the confines of what Federal Rule of Civil Procedure 26 allows, Defendant may challenge those requests through the discovery dispute process at the appropriate time. Thus, I find the second factor weighs against severing the claims.

Finally, as to the third and fourth factors, I find that Plaintiff could suffer prejudice should it be prevented from obtaining relevant discovery as to Defendant's coverage determination, which is substantially intertwined with Plaintiff's bad faith claim in this case. Indeed, in light of the overlap, severing the bad faith claim will likely create constant discovery disputes over which discovery requests relate to which claims—creating delay and inefficiency. Separately, I find any prejudice to Defendant

8

due to allegations of duplicative, irrelevant, or unduly burdensome discovery can be properly mitigated through the discovery dispute process.  As mentioned above, if disputes arise, they will be addressed and resolved in due course to ensure discovery is properly tailored to the needs of the case.  *See Mercury Indem. Co. of Am. v. Great N. Ins. Co.*, No. 19-cv-14278, 2020 WL 1531386, at *5 (D.N.J. Mar. 31, 2020) (denying the defendant's request to sever and stay the discovery of the bad faith claims and noting that defendant may raise discovery-related requests to the Magistrate Judge "at the appropriate time").   Thus, on balance, like the court eventually concluded in *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, No. 14-cv-4318, 2018 WL 627378, at *6 (D.N.J. Jan. 30, 2018), "[w]hile some cases may indeed be simplified and expedited by holding bad faith discovery in abeyance pending a determination of coverage, . . . this case is not one of them."

On a final note, to be clear, my decision relates specifically to the severance of these claims for purposes of discovery. I make no comment as to whether these claims should be severed in the future for purposes of trial.  That is a question for a different day.

9

## IV.  CONCLUSION

For the reasons set forth above, Defendant's motion to sever and stay Plaintiff's bad faith claim (Count two) is **DENIED**.  The Court will enter a Pretrial Scheduling Order setting forth the relevant discovery deadlines.  The parties shall expeditiously begin discovery without further delay and shall abide by the Court's Case Management Order.

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: June 25, 2026

Orig:  Clerk of Court
cc:    Counsel of Record
       The Honorable Brian R. Martinotti, U.S.D.J.